# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHANNON COLLINS, o/b/o )
S.D.C., a minor, )
                               )
           **Plaintiff,** )
                               )
v. ) Case No. CIV-14-184-SPS
                               )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
                               )
           **Defendant.** )

## OPINION AND ORDER

The claimant Shannon Collins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her son S.D.C. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining S.D.C. was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and that can be expected to cause death or that has lasted or can be expected to last for a continuous

period of not less than twelve months. 20 C.F.R. § 416.906. Social Security Regulations implement a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish he has an impairment or combination of impairments that is severe. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

## Background and Procedural History

S.D.C. was born on August 20, 2000, and was twelve years old at the time of the administrative hearing (Tr. 236, 319). The claimant alleges S.D.C. was disabled as of August 10, 2002, due to allergies, asthma, attention deficit hyperactivity disorder ("ADHD") and "pigeon chest" (Tr. 319, 340). The claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq.*) on July 25, 2011, which was denied. After a hearing on December 21, 2012, ALJ Bernard Porter found S.D.C. was not disabled in a decision dated July 15, 2013 (Tr. 10-22). The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined S.D.C. had severe impairments, *i. e.,* major depressive disorder, ADHD, allergies, and asthma, but that such impairments did not meet and were neither medically nor functionally equivalent to any of the relevant listings (Tr. 13-22). The ALJ concluded that S.D.C. was therefore not disabled (Tr. 22).

## Review

The claimant contends that the ALJ erred in determining whether S.D.C.'s impairments were functionally equivalent to the listings. Specifically, the claimant argues that the ALJ erred in evaluating the functional domains of: (i) interacting and relating with others, (ii) attending and completing tasks, and (iii) caring for yourself. The

Court agrees the ALJ did not perform a proper step three analysis and therefore, the case must be reversed and remanded.

The relevant evidence in the record reveals that S.D.C. was evaluated on March 15, 2006, and assessed with dysthymic disorder, rule out ADHD (combined type), along with a global assessment of functioning ("GAF") score of 60 (Tr. 740-743). The claimant reported on the screening and initial assessment that S.D.C. was fighting at school, did not want to go to bed at night, seemed sad and worried at times, and had angry outbursts (Tr. 738). It was recommended that S.D.C. obtain individual counseling and rehabilitation on an outpatient basis (Tr. 739).

At a psychiatric assessment on May 14, 2007, Dr. Kenneth Williams noted S.D.C. was reported to be aggressive on the playground, but that he behaved well in the office setting (Tr. 746-747). He diagnosed S.D.C. with ADHD, assigned a GAF range of 61 to 70, and did not prescribe any medication, although he indicated S.D.C. should return to the clinic when school started (Tr. 747).

At a psychological evaluation on June 18, 2007, B. Todd Graybill, Ph.D. administered the Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV), the results of which indicated S.D.C. had a full scale IQ of 91, placing him in the average range of intellectual functioning (Tr. 748-749). Dr. Graybill found that S.D.C. was able to understand, retain, and follow simple instructions; his social skills were adequate; and his attention span and concentration abilities were commensurate with his overall intellectual level (Tr. 749).

Dr. Eric Broadway at Stigler Health and Wellness began treating S.D.C. on September 28, 2010. S.D.C.'s mother reported he had no problems with school the previous year, but had become angry and depressed in the current year, he cried after the first day of school, and his teachers now described him as depressed (Tr. 657). Dr. Broadway prescribed S.D.C. medication for his depression (Tr. 657). On November 2, 2010, S.D.C. was being home schooled and still indicated he did not feel happy; Dr. Broadway made a medication adjustment (Tr. 658). On November 30, 2010, S.D.C.'s mother reported S.D.C. threatened suicide the previous week, but was hyperactive and that his depression was improved. Dr. Broadway noted the claimant had a smiling affect (Tr. 659). On January 18, 2011, S.D.C. reported he cried frequently and had thoughts of "wishing he was not alive" (Tr. 660). S.D.C.'s mother reported he was attending school for one hour per week with no complaints of hyperactivity but that he was still depressed, and Dr. Broadway again adjusted the medications (Tr. 660). On February 16, 2011, Dr. Broadway noted S.D.C.'s affect was bright with no recent suicidal talk or behaviors and that S.D.C.'s hyperactivity was reportedly well controlled on his current medication. He again adjusted the claimant's medications (Tr. 661). On May 11, 2011, Dr. Broadway noted S.D.C. seemed anxious, and his mother reported S.D.C. had recently threatened suicide and was edgy, but was doing well in school (Tr. 662). On August 9, 2011, Dr. Broadway noted S.D.C. was taking his medications without side effects and had a bright affect, and S.D.C. reported he was feeling better (Tr. 663).

Kathleen A. Ward, Ph.D. conducted two consultative examinations of S.D.C. (Tr. 506-511, 666-668). At the January 25, 2011 exam, Dr. Ward noted S.D.C. had been

-5-

undergoing mental health therapy for approximately one year, and that he had attended school for only an hour or two a day since October 2010. S.D.C. identified himself as "depressed" and stated he cried frequently, but his mother denied seeing frequent crying (Tr. 506). Dr. Ward opined that S.D.C.'s depressive behaviors, suicidal statements, and acute anxiety had an abrupt onset and that he may be prone to experiencing psychological pain in a physical way (Tr. 510). After testing (including the Personality Inventory for Youth, Burks' Behavior Rating Scale, and WISC-IV), Dr. Ward diagnosed S.D.C. with major depressive disorder, single episode, severe without psychosis; ADHD, primarily inattentive type; and rule out child abuse, due to S.D.C.'s extreme focus on his mother's ex-boyfriend (Tr. 510). At the September 12, 2011 exam, S.D.C.'s mother reported he was sleeping excessively and that he had missed ten days of school due to illness. Dr. Ward observed that S.D.C. either slept on the couch or was lethargic throughout the interview, and his mother reported this was typical behavior (Tr. 667). At this exam, Dr. Ward noted that S.D.C. had deficits in social judgment and problem solving, and recommended continuing mental health care. She assessed him with ADHD, inattentive type, and major depressive disorder (Tr. 668).

On September 21, 2011, state agency medical consultants David Bissell, M.D., and Joan Holloway, Ph.D., reviewed the record and completed a Childhood Disability Evaluation Form (Tr. 669-674). They determined S.D.C. had no limitation in acquiring and using information; a less than marked limitation in attending and completing tasks, moving about and manipulating objects, caring for himself, and health and physical well-

being; and a marked limitation in interacting and relating with others (Tr. 671-672). These opinions were adopted on review (Tr. 675-680).

At step three in a childhood disability case, the ALJ must determine whether the child's impairment or combination of impairments medically equals or functionally equals the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination or impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

In his written opinion, the ALJ concluded that S.D.C. did not functionally equal a listing because he had no marked or extreme limitations in any of the six domains of

functioning (Tr. 22). The ALJ's analysis for the domain of "interacting and relating with others" consisted of noting S.D.C. had difficulty getting along with his brother and sister and that S.D.C. testified he had friends he played with. The ALJ determined S.D.C. had a less than marked limitation in this domain (Tr. 19). Although the ALJ stated in his opinion that he assigned the "greatest weight" to the state agency medical consultants and adopted their determinations elsewhere in his opinion, he failed to mention they determined S.D.C. had a marked limitation in this domain and further provided no reasons for failing to adopt this determination (Tr. 15, 19, 371). This was error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Briggs,* 248 F.3d at 1239 ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. Because the ALJ failed to discuss probative evidence inconsistent with his conclusion in this functional domain, the Court cannot determine whether he actually considered it, and this Court is in no position to draw factual conclusions on the ALJ's behalf. *See, e.g., Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga,* 482 F.3d at 1207–08 ("[T]his

court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Although the ALJ's failure to address the state agency consultants' position in the domain of interacting and relating with others would have been harmless error if the ALJ properly concluded that the claimant did not have any marked or extreme limitations in the other five domains of functioning, it is not harmless here because the ALJ's analysis for the other five domains of functioning was also erroneous. Specifically, for the domain of "caring for yourself" the ALJ concluded S.D.C. had no limitation. He acknowledged S.D.C.'s mother's testimony that S.D.C. had problematic bathing and teeth brushing habits, and he noted S.D.C.'s daily activities, *i. e.*, household chores, playing sports, reading, playing with a pet, and spending time on the computer (Tr. 21). The ALJ's discussion of S.D.C.'s daily activities, however, relates to the domain of "attending and completing tasks" rather than the domain of "caring for yourself," and thus the daily activities as described by the ALJ are not evidence regarding S.D.C.'s limitations in the domain of "caring for yourself." *See* 20 C.F.R. § 416.926a(k)(2)(iv) (Caring for yourself); Soc. Sec. Rul. 09-7p, 2009 WL 396029, at *5 (Feb. 17, 2009) (in the domain of "caring for yourself," a school age child should be independent in most daily activities such as dressing and bathing but may need to be reminded). *Cf.* 20 C.F.R. § 416.926a(h)(2)(iv) (Attending and Completing Tasks); Soc. Sec. Rul. 09- 4p, 2009 WL 396033, at *5 (Feb. 18, 2009) (in the domain of "attending and completing tasks," a school age child should be able to sustain his attention well enough to participate in group sports, read alone, and complete family chores).

Furthermore, for the domain of "attending and completing tasks," the ALJ concluded that S.D.C. had a less than marked limitation, stating that although he had been diagnosed with ADHD and prescribed medication, he was being homeschooled, his mother testified he was doing better in his studies, and a teacher had tested him (Tr. 18). Although the ALJ *did mention* relevant factors related to this domain, *i. e.*, S.D.C.'s ADHD, removal from school, and home education, the ALJ failed to explain how the evidence supported a finding of a "less than marked limitation." *See Winfrey v. Chater*, 92 F. 3d 1017, 1025 (10th Cir. 1996) ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review."). Although not specifically asserted on appeal, the Court finds that the ALJ repeated this error in the five other domains of functioning as well.

The ALJ's analysis regarding S.D.C.'s degree of limitation in each of the six domains of functioning thus consisted of an explanation of the domain itself and a brief mention of some evidence, without explanation or analysis related to the ALJ's findings. But "[t]he ALJ is charged with carefully considering all the relevant evidence and *linking* his findings to specific evidence." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) [emphasis added], *citing Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the weighing of evidence took place inside the ALJ's head, leaving the Court unable to derive how he reached his conclusions. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct legal

standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence and the ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10. Thus, while the ALJ's decision does include a recitation of most of the evidence in the record, he did not link the evidence to his conclusions and such conclusory findings require remand for the Commissioner to explain his decision. Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in any adjustments to the step three findings regarding the six domains of functioning, the ALJ should re-determine whether S.D.C. is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of May, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**